## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

|  |  |
|---|---|
| ASHLEY ILENE, GALLIENNE NABILA, STEPHANIE RAO and YODIT YEMANE a/k/a JODIE JOE,<br><br>Plaintiffs,<br><br>- against -<br><br>REMI AND ASSOCIATES LLC d/b/a TEMPOO RESTAURANT AND LOUNGE a/k/a TEMPOO LOUNGE,<br><br>Defendant. | Case No.  8:25-cv-2101<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiffs ASHLEY ILENE, GALLIENNE NABILA, STEPHANIE RAO and YODIT YEMANE a/k/a JODIE JOE, (collectively, "Plaintiffs"), file this Complaint against REMI AND ASSOCIATES LLC, d/b/a TEMPOO RESTAURANT AND LOUNGE a/k/a TEMPOO LOUNGE ("Defendant") respectfully allege as follows:

### BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, TEMPOO RESTAURANT AND LOUNGE a/k/a TEMPOO LOUNGE located at 9424 Annapolis Rd, STE B, Lanham, Maryland 20706 (**hereinafter referred to as the "Night Club" or "Tempoo Lounge"**).

2.     As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Right of Privacy; d) Violation of Maryland's Common Law Right to Publicity; e) Maryland's Consumer Protection Act, West's Ann.

1

Md. Code, Commercial Law § 13-301; f) Defamation; g) Negligence and Respondeat Superior; h) Unjust Enrichment; and i) Quantum Meruit.

3.    In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## **JURISDICTION & VENUE**

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.    This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.    Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.    According to publicly available records, Defendant Remi and Associates LLC, is a limited liability company formed under the laws of the state of Maryland, with its principal place of business located at 12309 Thompson Rd, Bowie, Maryland, 20720. Upon information and belief, Remi and Associates LLC operates Tempoo Restaurant and Lounge, which is located at 9424 Annapolis Rd, STE B, Lanham, Maryland 20706.

8.    Venue is proper in the United States District Court for the District of Maryland because Defendant's principal place of business is located in Bowie, Maryland (Prince George's County).

9.    A significant portion of the alleged causes of action arose and accrued in Bowie, Maryland and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Bowie, Maryland.

///

///

**PARTIES**

*Plaintiffs*

10.     Plaintiff Ashley Ilene ("Ilene") is a well-known professional model, and a resident of Burlington County, New Jersey.

11.     Plaintiff Gallienne Nabila ("Nabila") is a well-known professional model, and a resident of Los Angeles County, California.

12.     Plaintiff Stephanie Rao ("Rao") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Yodit Yemane a/k/a Jodie Joe ("Yemane") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendants*

14.     Defendant, Remi and Associates LLC, is a limited liability company formed under the laws of the state of Maryland and registered to conduct business in Maryland. During times relevant to this action, Remi and Associates LLC operated Tempoo Restaurant and Lounge.

15.     Service of process may be perfected upon Defendant Remi and Associates LLC by serving the registered agent for service of process, Tajudeen Abubakkar, who can be located at 12309 Thompson Rd, Bowie, MD 20720.

**FACTUAL ALLEGATIONS**

16.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

17.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

18.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by

Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

19.     In the case of each Plaintiff, this apparent claim was false.

20.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

21.     No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

22.     Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

23.     Ilene is a model, content creator, influencer and clothing designer based in New Jersey. As a clothing designer, Ashley has created her own brand and website, Gal Vault (galvault.com). Ashley's start in modeling began when her social media posts caught them attention of Pretty Little Thing, which quickly led to collaborations with Fashion Nova, Shein and Matte Collection, and a career that has taken her around the world. Her current social media following is 115,000 on TikTok and 322,000 on Instagram. Ashley is also an advocate of regular exercise and self-care.[1]

24.     Upon information and belief, Ilene is depicted in the photo in Exhibit "A" to promote Tempoo Lounge on its Instagram page. This Image was intentionally altered to make it appear that Ilene was either an employee working at Tempoo Lounge, that she endorsed Tempoo Lounge, or that she was otherwise associated or affiliated with Tempoo Lounge.

25.     Ilene has never been employed at Defendant's establishment, has never been hired

---

[1]In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

26.     Nabila is an actress and model residing in Los Angeles, California. From a young age she participated in pageants, public speaking, dance, community service work, and singing. Nabila has been in the entertainment industry for over a decade working with brands such as Fashion Nova. She is currently signed to Wilhelmina Los Angeles and has a nonprofit geared towards the empowerment and advancement of young women. Nabila has over 2 million social media followers.

27.     Upon information and belief, Nabila is depicted in the photo in Exhibit "B" to promote Tempoo Lounge on its Instagram and Facebook page. This Image was intentionally altered to make it appear that Nabila was either an employee working at Tempoo Lounge, that she endorsed Tempoo Lounge, or that she was otherwise associated or affiliated with Tempoo Lounge.

28.     Nabila has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29.     Rao who is originally from Miami, FL currently resides in Los Angeles and is an influencer/model. She is currently representing Fashion Nova and has previously worked for Shein & PrettyLittleThing. She has appeared alongside Kim Kardashian in a Carolina Lemke glasses advertisement as well as other high profile ad campaigns. She has her own website which focuses on providing a fitness journey to her clients and promoting physical, mental, and spiritual wellness. Rao has over 1.1 million Instagram followers.

30.     Upon information and belief, Rao is depicted in the photo in Exhibit "A" to promote Tempoo Lounge on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Rao was either an employee working at Tempoo Lounge, that she endorsed Tempoo Lounge, or that she was otherwise associated or affiliated with Tempoo Lounge.

31.     Rao has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.     Yemane is a social media and modeling influencer with well over 1 million followers on Instagram, while she has appeared in music videos with Tyga and appeared on Nick Cannons' Wild N Out and worked for Pretty Little Thing Fashion House this model of Eritrean descent Is mostly known and now famous in the fashion industry for her near decade long association and Brand Ambassador with Fashion Nova (which has more than 10% of the USA fashion market) she was the first model to have her own clothing line collaboration with Fashion Nova, and the 34 year old is regarded as one of the highest paid models in the industry

33.     Upon information and belief, Yemane is depicted in the photo in Exhibit "C" to promote Tempoo Lounge on its Instagram page. This Image was intentionally altered to make it appear that Joe was either an employee working at Tempoo Lounge, that she endorsed Tempoo Lounge, or that she was otherwise associated or affiliated with Tempoo Lounge.

34.     Yemane has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

35.     Defendant operates (or operated, during the relevant time period,) a Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

36.     Defendant owns, operates, and controls Tempoo Lounge's social media accounts, including its Facebook, Twitter, and Instagram accounts.

37.     Defendant used Tempoo Lounge's Facebook, and Instagram accounts to promote Tempoo Lounge's , and to attract patrons.

38.     Defendant did this for their own commercial and financial benefit.

39.     Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Tempoo Lounge, endorsed Tempoo Lounge, or was otherwise associated or affiliated with Tempoo Lounge.

40.     Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Tempoo Lounge to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

41.     Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Tempoo Lounge, and at no point have any of the Plaintiffs ever endorsed Tempoo Lounge or otherwise been affiliated or associated with Tempoo Lounge.

42.     All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs

43.     Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

44.     Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

45.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

46.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known

in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

47.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

48.     Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Tempoo Lounge.

49.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

50.     In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Tempoo Lounge.

51.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

52.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

53.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Tempoo Lounge's website, Twitter, Facebook, or Instagram accounts.

54.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

///

///

///

8

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

55.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

56.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein.

57.    Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendants.

58.    Thus, this was done in furtherance of Defendant's commercial benefit.

59.    Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

60.    Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

61.    As such, an unauthorized use of Plaintiffs' image to promote a establishment created an undeniable confusion in Defendant consumer's minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of

Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness.

62.    Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

63.    Defendants knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

64.    Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

65.    As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

66.    Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

67.    Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

68.    WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**SECOND CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

69.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

70.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

71.     Defendants used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

72.     Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendants' businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

73.     Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

11

74.     Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

75.     Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant establishment events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

76.     Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

77.     Defendant knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

78.     Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

79.     Defendant's wrongful conduct as described herein was willful.

80.     As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

81.     Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

82.     The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

83.     Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

84.     Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Right of Privacy)

85.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

86.     As set forth hereon, Defendant has violated each Plaintiffs' common law right to privacy under Maryland law.

87.     Defendant has done so by appropriating each Plaintiffs' likeness for commercial purposes without authority or consent.

88.     Defendant invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their image and likeness on Defendant website or related social media accounts as part of Defendant's advertising campaign.

89.     At all relevant times, Defendant website and social media accounts were used and

operated by Defendant for advertising and trade purposes.

90.     Defendant website and social media accounts were designed to attract business tand generate revenue for Defendant.

91.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

92.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

93.     Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

94.     Upon information and belief, Defendants use of Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendant.

95.     At no point did any Defendant ever receive permission or consent to use any Plaintiffs image and likeness on their website or social media account.

96.     Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their image and likeness on any website or social media account, or on any other medium, in order to promote Defendant's business.

97.     At no point did Defendant ever compensate Plaintiffs for its use of their image and likeness.

98.     No applicable privilege or authorization exists for Defendant's use of Plaintiffs' image and likeness.

## FOURTH CAUSE OF ACTION
### (Violation of Maryland's Common Law Right to Publicity)

99.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

100.    As set forth hereon, each Plaintiff has and had at the time of Defendant's misappropriation a commercial interest in her image, photo, persona and likeness.

101.    Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

102.    As set forth herein, Defendant used each Plaintiff's image and likeness for commercial purposes by using same in Defendant advertising.

103.    Defendant did so without any Plaintiff's consent, written or otherwise.

104.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

105.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

106.    Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their image and likeness on any website or social media account, or on any other medium, in order to promote Defendant's business.

107.    At no point did Defendant ever compensate Plaintiffs for its use of their image and likeness.

108.    No applicable privilege or authorization exists for Defendant's use of Plaintiffs' image and likeness.

///

## FIFTH CAUSE OF ACTION

**(Maryland's Consumer Protection Act, West's Ann. Md. Code, Commercial Law § 13-301)**

109.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

110.    Defendant operated Defendant's website and social media accounts in order to promote Defendant, to attract clientele thereto, and to thereby generate revenue for Defendant.

111.    As such, Defendant's operation of the website and social media accounts, and their publication of image and likeness thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Maryland.

112.    Defendants published Plaintiffs' image and likeness on Defendant website and social media accounts in order to create the false impression that Plaintiffs were either entertainers working at Defendant's business, endorsed Defendant's business, or were otherwise affiliated, associated, or connected with Defendant's business.

113.    As such, Defendants' intent in publishing Plaintiffs' image and likeness was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendant's business.

114.    Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Maryland law.

115.    Defendant advertising practices offends the public policy of Maryland insofar as it constitutes misappropriation of Plaintiffs' property rights in their own image and likeness, and invasion of Plaintiffs' privacy, for Defendant's commercial benefit.

116.    Defendant's advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are entertainers at Defendant.

117.    Defendant's advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are entertainers at, endorse, or are otherwise affiliated with,

Defendant.

118.    There are no benefits to Defendant advertising practices as set forth hereon except a benefit to Defendant own commercial interests.

119.    As a result of Defendant's unauthorized and misleading publication of Plaintiffs'' image and likeness on their website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

120.    As a result of Defendant's unauthorized and misleading use of Plaintiffs' image and likeness, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Defamation)

121.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

122.    As detailed throughout this Complaint, Defendant has published altered image and likeness of Plaintiffs in order to promote their Remi and Associates LLC to the general public and potential clientele.

123.    Defendant's publication of said image and likeness constitutes a representation that Plaintiffs were either employed by Defendant's business, that they endorsed Defendant's business, or that they had some affiliation with Defendant's business.

124.    None of these representations were true.

125.    In publishing Plaintiffs' altered image and likeness, it was Defendant's intention to create a false impression to the general public that Plaintiffs were entertainers working at Defendant's business or endorsed Defendant's business.

126.    Defendant was at least negligent in publishing Plaintiffs' image and likeness because they knew, or should have known, that Plaintiffs were not employed by Defendant's

business, had no affiliation with Defendant's business, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

127.    In the alternative, Defendant's published the image and likeness of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by Defendant's business, had no affiliation with Defendant's business, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

128.    Despite Defendant's knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for themselves.

129.    Defendant's publication of Plaintiffs' image and likeness constitutes defamation under Maryland law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., working as an entertainer and/or endorsing Defendant's business which would subject each Plaintiffs to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiffs of confidence and friendly intercourse in society.

130.    Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Maryland law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

131.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was working for or endorsing Defendant, an inference which Defendant's publication of the image and likeness support.

132.    Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Maryland law because, insofar as said publication falsely portrays each of the Plaintiffs as an entertainer, it imputes unchastity to her.

## SEVENTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

133.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

134.    Plaintiffs are further informed and believe and hereon allege that Defendant maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

135.    Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

136.    Defendant owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

137.    Defendant further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

138.    Defendant breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

139.    Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Maryland law, were not violated. Defendant breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

140.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their image and likeness were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

141.    As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(Unjust Enrichment)**

142.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

143.    As set forth in detail above, Defendant published Plaintiffs' image and likeness in order to promote Defendant's Club to the general public and potential clientele.

144.    Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at Defendant's Club or endorsed Defendant's Club.

145.    Defendant's purpose in publishing Plaintiffs' image and likeness was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

146.    Upon information and belief, Defendant did in fact benefit commercially due to their unauthorized use of Plaintiffs' image and likeness.

147.    Defendant has been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to Defendant's business.

148.    Plaintiffs have not been compensated for Defendant's commercial exploitation of their image and likeness, and thus any financial benefit which Defendant received due to said exploitation is unjust.

149.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Quantum Meruit)

150.    Plaintiffs hereby repeats and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

151.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

152.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

153.    Although Defendant has availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at, endorse, or are otherwise affiliated with Defendant's business, Defendant has not compensated Plaintiffs.

154.    Plaintiffs are therefore entitled to reasonable compensation for Defendant's unauthorized use of their image and likeness.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b)  For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Tempoo Lounge's Night Club;

(c)  For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117;

(e)  For such other and further relief as the Court may deem just and proper.

Dated: June 30, 2025.
New York, NY

/s/ John V. Golaszewski
John V. Golaszewski
New York Bar No. 4121091
**THE CASAS LAW FIRM, P.C.**
1325 Avenue of the Americas, 28th Floor
New York, NY 10019
Tel: 855-267-4457
Fax: 855-220-9626
john@talentrights.law